GARY P. BURCHAM
California Bar No. 190780
964 Fifth Avenue; Suite 300
San Diego, CA 92101
Telephone: (619) 699-5930

Attorney for Jose Alberto Villasenor

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE MARILYN L. HUFF)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR2205-MLH |
| | ) | |
| Plaintiff, | ) | Date: September 22, 2008 |
| | ) | Time: 2:00 p.m. |
| v. | ) | |
| | ) | **NOTICE OF MOTIONS AND MOTIONS TO:** |
| JOSE ALBERTO VILLASENOR, | ) | |
| | ) | |
| Defendant. | ) | **SUPPRESS EVIDENCE** |
| | ) | |
| | ) | |

TO:      KAREN P. HEWITT, UNITED STATES ATTORNEY, and
         LUELLA CALDITO, ASSISTANT UNITED STATES ATTORNEY

         PLEASE TAKE NOTICE that on Monday, September 22, 2008, 2:00

p.m., or as soon thereafter as counsel may be heard, the defendant, Jose

Alberto Villasenor, by and through his attorney, Gary P. Burcham, will

ask this Court to enter an order granting the motion listed below.

//

//

//

//

//

//

1 |                               **<u>MOTIONS</u>**

2 |          Jose Alberto Villasenor, the defendant in this case, by and

3 | through his attorney, Gary P. Burcham, pursuant to the Amendments to the

4 | United States Constitution, Fed. R. Crim. P., and all other applicable

5 | statutes, case law and local rules, hereby moves this Court for an order:

6 |          Suppressing Evidence

7 |          These motions are based upon the instant motions and notice of

8 | motions, the attached statement of facts and memorandum of points and

9 | authorities, and any and all other materials that may come to this

10 | Court's attention at the time of the hearing on these motions.

11 |                               Respectfully submitted,

12 |

13 | Dated: September 2, 2008          /s/ Gary P. Burcham
       |                               GARY P. BURCHAM
14 |                               Attorney for Jose Alberto Villasenor

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1                 UNITED STATES DISTRICT COURT

2         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3  UNITED STATES OF AMERICA,     )  U.S.D.C. No. 08CR2205-MLH
                               )
4        Plaintiff-Appellee,  )  CERTIFICATE OF SERVICE
  v.                           )
5                              )
  JOSE ALBERTO VILLASENOR,      )
6                              )
        Defendant-Appellant.  )
7  _____)

8      IT IS HEREBY CERTIFIED THAT:

9      I, GARY P. BURCHAM, am a citizen of the United States and am at

10  least eighteen years of age.  My business address is 964 Fifth Avenue,

11  Suite 300, San Diego, CA 92101.

12      I am not a party to the above-entitled action.  I have caused

13  service of Defendant's Notice of Motion and Motion to Suppress Evidence

14  on the following party or parties by electronically filing the foregoing

15  with the Clerk of the District Court using its ECF System, which

16  electronically notifies him/her.

17  **Luella Caldito, Esq.**
    **Assistant United States Attorney**
18  **Border Crimes Unit**
    **880 Front Street**
19  **San Diego, CA 92101**

20
      I declare under penalty of perjury that the foregoing is true and
21  correct.
22
  Executed on September 2, 2008.
23

24                   /s/ Gary P. Burcham
                   GARY P. BURCHAM
25

26

27

28

1 | GARY P. BURCHAM
California Bar No. 190780
2 | 964 Fifth Avenue; Suite 300
San Diego, CA 92101
3 | Telephone:  (619) 699-5930

4 | Attorney for Jose Alberto Villasenor

5

6

7

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | (HONORABLE MARILYN L. HUFF)

11 | UNITED STATES OF AMERICA,      )  Case No. 08CR2205-MLH
                                   )
12 |            Plaintiff,         )
                                   )  **STATEMENT OF FACTS AND**
13 | v.                            )  **MEMORANDUM OF POINTS AND**
                                   )  **AUTHORITIES IN SUPPORT**
14 | JOSE ALBERTO VILLASENOR,      )  **OF DEFENDANT'S MOTIONS**
                                   )
15 |            Defendant.         )
                                   )
16 |

17 | **INTRODUCTION**

18 |        Jose Alberto Villasenor has been charged by indictment with

19 | importation of cocaine, and possession of cocaine with the intent to

20 | distribute.   These charges arise from a traffic stop made on June 18,

21 | 2008, in El Centro, California, which led to the discovery of multiple

22 | packages of cocaine hidden in a vehicle driven by Mr. Villasenor.

23 |        Pursuant to the Fourth Amendment of the U.S. Constitution, Mr.

24 | Villasenor now moves to suppress all evidence seized as a result of the

25 | illegal stop, including any "fruits" of this unlawful stop.    Mr.

26 | Villasenor further requests an evidentiary hearing on this issue.

27

28

# STATEMENT OF FACTS

## A.    Surveillance by ICE Agents

The sequence of events in this unusual case began just before 9:00 a.m. on June 18, 2008, when Mr. Villasenor entered the United States from Mexico through the Calexico Port of Entry driving a white 2002 PT Cruiser.  Villasenor was the lone occupant of the car.  At the border, Mr. Villasenor was sent to secondary inspection because the vehicle's license plate generated a computer referral.[1]  In vehicle secondary, a Canine Enforcement Officer (CEO) screened the vehicle with a Narcotics Detector Dog (NDD).  The NDD did not alert to the vehicle.  After CBP Officers conducted a further inspection of the vehicle with negative results, Mr. Villasenor was released from secondary and drove northbound onto Imperial Avenue in Calexico, CA.

While Mr. Villasenor waited at a red light at the intersection of 2nd Street and Imperial, Immigration and Customs Enforcement (ICE) Special Agents Torregrosa and Vensk observed the white Chrysler PT Cruiser that Mr. Villasenor was driving.[2]  SA Torregrosa believed this vehicle was the same vehicle that had been referenced during his post-arrest contact with Daniel Rodriguez the day before.  Apparently, following his arrest, Mr. Rodriguez told the agents that if he had crossed the border successfully, he was supposed to meet someone driving a PT Cruiser at the Pep Boys in Calexico to deliver his vehicle.  Mr. Rodriguez apparently had a photo of this PT Cruiser on his cell phone which he showed the agents,

---

[1]The registered owner of the vehicle was Daniel Ivan Rodriguez.  Mr. Rodriguez was arrested the prior day after he drove a car containing marijuana into the United States through the Calexico POE.

[2]The location of the vehicle indicated that it had just exited the port of entry and could not have come from another location.

1   and agents were able to make out the license number from this photo.  The

2   vehicle driven by Mr. Villasenor was alleged to be the same vehicle

3   depicted in this photo.

4           Agents Torregrosa and Vensk then began following the vehicle.

5   Mr. Villasenor first drove to a Fill-Co service station a few blocks away,

6   exited the car, and spoke on his cell phone.  Mr. Villasenor then got back

7   inside the vehicle and continued to drive north on Imperial.   Mr.

8   Villasenor then drove to an AM/PM service station, where he parked at the

9   gas pumps and walked around the vehicle while he talked on the telephone.

10  After leaving the AM/PM station, Mr. Villasenor drove to the El Centro DMV

11  office on Imperial Avenue.  The DMV office is approximately 13 miles from

12  the Calexico POE.  Villasenor parked the car in the DMV parking lot, and

13  went inside the DMV office.

14  **B.        Traffic Stop**

15

16          At 10:01 a.m., Agent Torregrosa called the El Centro Police

17  Department (ECPD) and requested that ECPD conduct a traffic stop of the

18  vehicle Mr. Villasenor was driving.  After Mr. Villasenor left the DMV

19  office and was driving southbound on Imperial Avenue, El Centro Police

20  Officer Seaman initiated a traffic stop at the intersection of South

21  Imperial Avenue and West Aurora Drive.[3]  The location of the stop was just

22  over a mile south of the DMV.  Seaman's stated basis for the stop was that

23  there was a rosary that was hanging from the rear-view mirror of the

24  vehicle Villasenor was driving, something Seaman believed obstructed Mr.

25  Villasenor's view in violation of Cal. Vehicle Code § 26708(a)(2).

26          There is conflicting information in the discovery as to when

27

28          [3] The government ROI says that Officer Ramirez stopped the
    vehicle.  This is not true; the original stop was made by Officer
    Seaman.

1   this stop occurred.   While the government ROI states that the stop
2   occurred around 10:25 a.m., the ticket that was written for a different
3   violation lists 10:14 a.m. as the time the ticket was issued.  [Ex. "G"].
4   Given that some amount of time obviously passed between the initial stop
5   and the time that the ticket was written, the time of the stop likely was
6   sometime between 10:00 and 10:10 a.m..

7       Because Officer Seaman did not speak Spanish, Seaman turned the
8   stop over to Spanish-speaking Officer Ramirez who subsequently arrived at
9   the scene.  Officer Ramirez requested Mr. Villasenor's driver's license,
10  the registration of the car, and proof of insurance.  Mr. Villasenor
11  provided the driver's license and registration, but said the car was not
12  his and that he did not have insurance documents to provide.  Officer
13  Ramirez wrote Mr. Villasenor a citation for failing to have proof of
14  insurance in the vehicle.  He did not write a citation for anything
15  related to the rosary hanging from the rear-view mirror.

16      Agent Torregrosa also called a CEO to conduct a search of the
17  vehicle.  At approximately 10:55 a.m., more than 40 minutes after the
18  ticket had been written for the insurance violation, CEO Barela arrived
19  with his NDD "Astrix."  CEO Barela screened the vehicle with his NDD and
20  the dog alerted to the vehicle.  CEO Barela conducted a further inspection
21  and discovered a non-factory compartment that contained packages of
22  cocaine.

23      At approximately 11:00 A.M., Mr. Villasenor was placed under
24  arrest.  SA Worgen and SA Morquecho conducted further inspection of the
25  PT Cruiser at the Calexico POE.  A total of 15 packages of cocaine was
26  discovered concealed in the vehicle.

27

28  //

**C.    Interview with Mr. Villasenor**

At approximately 5:00 P.M., Agent Worgen interviewed Mr. Villasenor after allegedly providing him his <u>Miranda</u> warnings and obtaining a waiver of his rights.  Mr. Villasenor stated he did not know drugs were hidden in the vehicle.  Villasenor stated that he had the PT Cruiser on and off for approximately three weeks.  He had driven the vehicle across the border three or four times, and was told to drive it so as to become familiar with it.

Mr. Villasenor stated a man named Javier asked him to drive the PT Cruiser into the United States and register it in his name.  Furthermore, he stated he was not receiving any money for driving the PT Cruiser into the United States.

1

<u>**ARGUMENT**</u>

2

**ALL EVIDENCE SEIZED AS A RESULT OF THE VEHICLE STOP MUST BE SUPPRESSED**
3  **BECAUSE THERE WAS NOT A VALID BASIS FOR THE INITIAL STOP OF THE VEHICLE**
    **AND, EVEN IF THE INITIAL STOP WAS PERMISSIBLE, THE EXECUTION OF THE**
4                    **STOP WAS VIOLATIVE OF THE FOURTH AMENDMENT**

5

The Fourth Amendment safeguards the people in their person,

6  houses, papers and effects against "unreasonable searches and seizures."

7  U.S. Const., Amend. IV.   Traffic stops are seizures under the Fourth

8  Amendment, therefore officers must have at least reasonable suspicion of

9  criminal misconduct before detaining a driver.  <u>Delaware v. Prouse</u>, 440

10 U.S. 648, 653 (1979).   "Reasonable suspicion is formed by specific,

11 articulable facts which, together with objective and reasonable

12 inferences, form the basis for suspecting that the particular person

13 detained is engaged in criminal activity." <u>United States v. Lopez-Soto</u>,

14 205 F.3d. 1101, 1105 (9th Cir. 2000).   An officer is entitled to rely on

15 his training and experience in drawing inferences from the facts he

16 observes; however, those inferences must also "be grounded on objective

17 facts and be capable of rational explanation." <u>United States v. Garcia-</u>

18 <u>Camacho</u>, 53 F.3d 244, 246 (9th Cir. 1995); <u>see also</u> <u>United States v.</u>

19 <u>Sokolow</u>, 490 U.S. 1, 7 (1989) ("The Fourth Amendment requires some minimal

20 level of objective justification for making the stop.").

21

A.      **BECAUSE THE POLICE OFFICER WHO STOPPED VILLASENOR HAD**
22       **NO  REASONABLE  BASIS  TO  BELIEVE  THAT  THE  ROSARY**
         **HANGING   FROM   THE   VEHICLE'S   REAR-VIEW   MIRROR**
23       **OBSTRUCTED  VILLASENOR'S  VIEW,  THE  INITIAL  STOP  OF**
         **VILLASENOR'S VEHICLE WAS INVALID**

24

25       "A pretextual stop occurs when the police use a legal

26 justification to make the stop in order to search a person or place, or

27 to interrogate a person, for an unrelated serious crime for which they do

28 not have the reasonable suspicion necessary to support a stop." <u>United</u>

<u>States v. Guzman</u>, 864 F.2d 1512, 1515 (9th Cir. 1988).  In <u>Whren v. United</u>

1  States, 517 U.S. 806, 808-09 (1996), the Supreme Court held that such a
2  stop was reasonable under the Fourth Amendment where officers had probable
3  cause to believe that the petitioner violated the traffic code, even if
4  the ultimate charge was not related to the traffic stop.  See also United
5  States v. Willis, 431 F.3d 709, 715 (9th Cir. 2005)("*Whren* stands for the
6  proposition that if the officers have probable cause to believe that a
7  traffic violation occurred, the officers may conduct a traffic stop even
8  if the stop serves some other purpose.").

9       "Although Whren permits an officer to conduct a pretextual
10 traffic stop as a means to uncover other criminal activity, the officer
11 must reasonably suspect a traffic law violation."  United States v. King,
12 244 F.3d 736, 738 (9th Cir. 2001).  "Courts should inquire whether a
13 reasonable officer 'would have' made the stop anyway, apart from his
14 suspicions about other more serious criminal activity."  United States v.
15 Cannon, 29 F.3d 472, 476 (9th Cir. 2006).  Police may make an
16 investigative traffic stop based on "reasonable suspicion."  United States
17 v. Ibarra, 345 F.3d 711, 713 (9th Cir. 2003).

18      As depicted in Exhibits A-D, a thin rosary was hanging from the
19 rearview mirror of the vehicle being driven by Villasenor.  This rosary
20 was a thin necklace-type item that hung approximately 8-10 inches from the
21 base of the rear-view mirror, with a small cross attached to the bottom.
22 As set forth earlier, Officer Seaman pulled Villasenor over for a
23 violation of Cal. Vehicle Code § 26708(a)(2) based on his conclusion that
24 this rosary obstructed the view of Villasenor.  This section provides:

25            No person shall drive any motor vehicle with any
26            object or material placed, displayed, installed,
              affixed, or applied in or upon the vehicle which
27            obstructs or reduces the driver's clear view through
              the windshield or side windows.
28

Cal. Vehicle Code § 26708(a)(2).

1    Villasenor asserts at the outset that Officer Seaman lacked an
2 objective, reasonable basis for concluding that the rosary was obstructing
3 Villasenor's view through the front windshield.  The evidence in this case
4 is comparable, if not even weaker, than the evidence in People v. White,
5 107 Cal. App.4th 636 (2003), in which the California Court of Appeal found
6 that an officer did not have an objectively reasonable basis for his
7 belief that an air freshener hanging from an automobile rear-view mirror
8 violated Cal. Veh. Code § 26708(a)(2).

9    In White, the officer stopped a vehicle because a tree-shaped
10 air freshener was hanging from the rearview mirror.  [See Ex. "E"].[4]  The
11 government claimed that the officer had a reasonable suspicion that the
12 air freshener violated section 26708(a)(2).  Id. at 640.  The California
13 Court of Appeal found that it was not objectively reasonable for the
14 officer to believe that the air freshener hanging from the rearview mirror
15 "obstructed or reduced [the driver's] clear view through the windshield
16 so as to constitute a violation of the Vehicle Code."  White, 107 Cal.
17 App. 4th at 640.  In support of its conclusion, the court first noted that
18 "[b]y its plain language, Vehicle Code section 26708, subdivision (a)(2)
19 prohibits driving a vehicle with an object displayed that obstructs or
20 reduces the driver's clear view through the windshield or side windows.
21 The statute does not flatly prohibit hanging any object on a rear view
22 mirror."  Id.  See also King, 244 F.3d at 740 (9th Cir. 2001) (in
23 addressing Alaska statute, "we conclude that the ordinance's use of 'upon'
24 the front windshield requires placement on or in direct contact with the
25 windshield.  An object hanging elsewhere, even if in close proximity, does

26
27

[4] Exhibit "E" is a photo of the tree-shaped air-freshener that
is commonly available at convenience and auto parts stores that
likely was at issue in White.

8                               08CR2205-H

1 not trigger a violation of the ordinance").[5]

2   The court also noted several relevant facts that supported
3 White's suppression argument: First, the officer himself "never testified
4 that he believed the air freshener obstructed the driver's view."  White,
5 107 Cal. App. 4th at 640.  Second, "the officer never testified to other
6 specific and articulable facts, like hesitant or erratic driving, that
7 might suggest the driver's clear view was impeded."  Id.  Third, an expert
8 testified that the air freshener would not have obstructed the driver's
9 vision, and the defendant confirmed that it had not obstructed his vision.
10 Last, even the trial court acknowledged "the ubiquitous nature of these
11 air fresheners."  Id.

12   The facts and analysis from White are similar to the case at
13 bar.  First, like the officer in White, Officer Seaman did not report
14 "specific and articulable facts, like hesitant or erratic driving, that
15 might suggest the driver's clear view was impeded."  White, 107 Cal. App.
16 4th at 640.  The officer acknowledged that the vehicle was in its proper
17 lane, and that it was not swerving or speeding.  The officer also did not
18 state that he saw Mr. Villasenor peering around the rosary, or that there
19 was any other problem with his driving that related to the hanging
20 necklace.

21
22   Second, the photographs of the rosary shows that its small and
23 slender size simply could not have been reasonably interpreted to obstruct
24 Villasenor's view sufficiently to implicate section 26708(a)(2).  Not only

25

26   [5] The California legislature has not prohibited the hanging of
   objects from a vehicle's rearview mirror.  Contrast Illinois
27 statute 625 Ill. Comp. Stat. 5/12-503(c)(2004), which states that
   "No person shall drive a motor vehicle with any objects placed or
28 suspended between the driver and the front windshield, rear window,
   side wings or side windows immediately adjacent to each side of the
   driver which materially obstructs the driver's view".

08CR2205-H

1  do the photos of the rosary compel this conclusion, the tree-shaped air
2  freshener in <u>White</u> that the California Court of Appeal found did not
3  provide a reasonable basis for the stop had a larger surface area than
4  this rosary. [See Ex. "E"]. <u>But see</u> <u>People v. Colbert</u>, 157 Cal. App. 4th
5  1068, 1073 (2007)(affirming denial of motion to suppress where, in case
6  also involving air freshener, officer testified that object was large
7  enough to obstruct view through the front windshield, and that he had
8  personally experienced that a similar object could obstruct view of a
9  vehicle or pedestrian). Nor was there any evidence to suggest that the
10 rosary had any sort of reflective quality which might have figured in the
11 officer's determination. What was in the vehicle was a thin necklace with
12 a tiny cross suspended at the bottom, an item which could not, under any
13 reasonable consideration, violate the statute. The fact that Mr.
14 Villasenor was not ticketed for the rosary further exemplifies this.

15      Finally, a necklace hanging from a rearview mirror is, much like
16 the air freshener in <u>White</u>, an item that is commonly displayed in a
17 vehicle. As explained in <u>White</u>, the mere presence of an object hanging
18 from a rearview mirror does not by itself violate section 26708(a)(2).
19 <u>Id.</u> at 642. Just as the air freshener is a commonly-employed item that
20 is understood not to violate section 26708, likewise the small rosary in
21 this case was not the sort of item that could have reasonably been
22 interpreted to violate this code section.

23      The attempt by Officer Seaman to articulate a basis for the stop
24 on the basis of Mr. Villasenor's small stature likewise falls short.
25 Officer Seaman wrote that "[b]ased on how low Mr. Villasenor was seated
26 in the vehicle, I felt this rosary was placed in a manner that obstructed
27 or reduced Mr. Villasenor's clear view through the windshield." This
28 makes no sense. Whether someone was 5 foot tall or 6 foot tall, the

1 rosary had the same effect with regard to the view out of the windshield
2 of the car.  If a distinction had to be drawn, one could actually say that
3 by being a short man and sitting lower in the vehicle, the rosary which
4 hung from the top of the windshield actually was less likely to cross into
5 Villasenor's field of vision, as opposed to if Villasenor was seated high
6 in the seat and was looking through the upper portion of the windshield.
7 Either way, this was an objectively unreasonable basis that does not
8 provide any support for the stop.

9        In sum, unless an officer can clearly point, in advance, to the
10 specific and reasonable observations showing that a driver's view is
11 reduced or obstructed by an item, an officer in not justified in stopping
12 a vehicle merely because an object is dangling from the rearview mirror.
13 Because there was no such objectively reasonable basis to support this
14 pretextual stop based on the rosary, all evidence obtained as a result of
15 Officer Seaman's illegal stop must be suppressed.

16 **B.     THE CONTINUED DETENTION OF MR. VILLASENOR FOLLOWING
17       THE ISSUANCE OF THE CITATION VIOLATED THE FOURTH
       AMENDMENT**

18
19        Even if this Court believes that the initial stop of the vehicle
20 was a valid pretextual stop, the continued detention of Mr. Villasenor
21 following the issuance of the citation violated the Fourth Amendment.

22        "It is clear that a 'seizure that is justified solely by the
23 interest in issuing a warning ticket to the driver can become unlawful if
24 it is prolonged beyond the time reasonably required to complete that
25 mission.'"  United States v. Patterson, 472 F.3d 767, 776 (9th Cir.
26 2006)(quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)). While
27 questions that do not appreciably extend the duration of a traffic stop
28 are reasonable, see United States v. Stewart, 473 F.3d 1265, 1269 (10th

Cir. 2007), an unreasonably long detention violates the Constitution. See

1  <u>United States v. Childs</u>, 277 F.3d 947, 953-54 (7th Cir. 2002)(en banc)("It
2  is not necessary to determine whether the officers' conduct added a minute
3  or so to the minimum time in which these steps could have been
4  accomplished.  What the Constitution requires is that the entire process
5  remain reasonable.").

6          The purpose of the pretextual stop was effectuated when Officer
7  Ramirez obtained Villasenor's driver's license and vehicle registration,
8  and thereafter issued him a ticket at 10:14 a.m. for not having proof of
9  insurance in the vehicle.  Any suspicion as to whether Villasenor had
10 permission to drive, and the issue relating to the insurance, was
11 addressed fully once Mr. Villasenor produced the license and registration
12 and once Officer Ramirez issued the insurance citation minutes after the
13 stop.

14         Instead of releasing Mr. Villasenor at that point, something
15 which Mr. Villasenor specifically requested that the officer do, [Decl.
16 Of Villasenor at Ex. "F"], the officer told Mr. Villasenor that he had to
17 wait and could not leave.  The delay was not one of mere minutes as courts
18 have approved, but rather, was a delay of approximately 40 minutes while
19 everyone waited for a drug dog to arrive and sniff the car.  The
20 extraordinary length of this detention, coupled with the facts that: (1)
21 this vehicle had been searched in this exact same manner an hour earlier;
22 and (2) had been under constant surveillance the entire time since its
23 exit from the port of entry, requires suppression of all evidence obtained
24 as a result of the stop.

25         Here, the arresting officer lacked a reasonable and articulable
26 suspicion to prolong the detention of Villasenor beyond what was required
27 to address the vehicle code issues that provided the basis for the stop.
28 At the time Officer Ramirez told Mr. Villasenor that he could not leave

1  and the stop was prolonged for 40 minutes, the government knew the

2  following with regard to its investigation: (1) Villasenor was driving a

3  vehicle that, according to Daniel Martinez, was supposed to meet a load

4  car in Calexico the day before; (2) the R/O of the PT Cruiser was Daniel

5  Martinez who had been arrested the previous day; (3) Villasenor had just

6  crossed the border driving this vehicle; and (4) Villasenor had driven

7  as described above (to two gas stations and then to the DMV office) since

8  crossing the border, and was now heading in a direction back to the

9  border.

10      What the government also knew, however, was that this vehicle

11  had just been extensively searched, including a dog search, in secondary

12  at the Calexico POE, and that agents had followed this car continuously

13  following its entry into the United States.  When all of these facts are

14  considered together, the extension of the vehicle stop for 40 minutes

15  beyond what was required to handle the vehicle code infraction violated

16  the Fourth Amendment.

17      Starting with whether the government had a reasonable suspicion

18  sufficient to detain Mr. Villasenor for this lengthy period in this case,

19  it did not.  Perhaps the best evidence that the government had no such

20  suspicion was the fact that instead of stopping the vehicle on the basis

21  of their drug investigation, agents instead called the El Centro P.D. to

22  stop the vehicle for a traffic violation.  Moreover, there was nothing

23  that occurred during the stop that provided any further suspicion that the

24  car contained drugs.  It was a routine traffic stop, Mr. Villasenor fully

25  complied with the officers, and there were no indications that he was

26  nervous or did anything else that might have increased the level of

27  suspicion.  It started as a mere traffic stop, and nothing changed the

28  nature of the stop during the encounter.  See United States v. Mesa, 62

F.3d 159, 162 (6th Cir. 1995) ("Once the purposes of the initial traffic stop were completed, there is no doubt that the officer could not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify further detention.").

Aside from the manner in which this vehicle was stopped, there are several other points that demonstrate that no reasonable suspicion existed to hold the vehicle. First, and most importantly, this vehicle had just been intensively searched in secondary, including having a NDD scan the vehicle. "Probable cause may be based on collective knowledge of all of the officers involved in the investigation and all of the reasonable inferences that may be drawn therefrom." United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir. 1989). Here, the collective knowledge of the agents included the fact that just prior to 9:00 in the morning, Mr. Villasenor drove this car to the border, it was referred to secondary because of a computer-generated referral (likely because of the incident the day before or because of the R/O's name), and it was intensively searched at secondary, including a NDD screening, with negative results for drugs. Nothing cuts more against a reasonable suspicion that a car may contain drugs than the fact that an hour earlier and without any break in surveillance, the vehicle was intensively searched, including by a narcotic detector dog, at a port of entry and no drugs were detected.

Second, it is important to note that the information that was provided by Daniel Martinez the prior day indicated not that the PT Cruiser was a drug crossing vehicle, but rather, that it was a vehicle that was going to meet a drug-laden vehicle that crossed the border. Had Mr. Villasenor said that this car was going to cross drugs into the United

1  States, the government might have a stronger argument.  Even though the
2  vehicle was registered in Daniel Martinez's name, there was no indication
3  that this vehicle had ever been used, or ever would be used, to smuggle
4  drugs.  This is an important distinction.

5          Third, the manner of Mr. Villasenor's driving after crossing the
6  border contradicts any suspicion that this car contained drugs.  If this
7  was a car laden with a million dollar cargo of cocaine, there is no way
8  that the vehicle would have been driven to a government building in El
9  Centro where it then was parked and left unattended.  If there is one
10 thing that is consistently argued by prosecutors in border-bust cases, it
11 is that the drugs are closely guarded and monitored once they cross the
12 border.  For this reason, an individual who drives a vehicle to a
13 government office, and then leaves it in the parking lot unattended, is
14 very much unlike a normal border drug trafficker.  Thus, the manner in
15 which Mr. Villasenor drove following his entry indicated not that this was
16 a car that contained drugs, but rather, that it was a vehicle that did not
17 contain valuable narcotics.

18         Given the non-existence of any reasonable suspicion that this
19 car contained drugs, the length of the detention clearly was violative of
20 the Fourth Amendment.  A few minutes is the normal amount of time that
21 police officers need to run computer checks, write tickets, and end the
22 stop.  See Berkemer v. McCarty, 468 U.S. 420, 437 (1980) ("[D]etention of
23 a motorist pursuant to a traffic stop is presumptively temporary and
24 brief.  The vast majority of roadside detentions should last only a few
25 minutes."); Delaware v. Prouse, 440 U.S. 648, 653 (1979) (a traffic stop
26 "is quite brief"); United States v. Sharpe, 470 U.S. 675, 685
27 (1985)(quoting United States v. Place, 462 U.S. 696, 703 (1983))( Police
28 must "'diligently pursue their investigation'" and may not prolong a

1  detention unnecessarily). The approximately 40 minute detention of

2  Villasenor after the ticket was written and the purposes of the traffic

3  stop had been completed well exceeded this baseline. While a very brief

4  detention of a minute or two to ask a few questions likely would have been

5  permissible under the current state of the law, the 40 minute wait for the

6  drug dog to arrive was not even close. The continued detention of

7  Villasenor violated his Fourth Amendment rights and the suppression of all

8  evidence obtained as a result of this stop must be ordered. _See_ _United_

9  _States v. Twilley_, 222 F.3d 1092, 1095 (9th Cir. 2000)(if initial stop

10 of vehicle is invalid, all evidence seized as a result of the stop is

11 subject to suppression as fruit of the poisonous tree).

**III.**

**CONCLUSION**

15    For the foregoing reasons, it is respectfully requested that the

Court grant the above motion to suppress.

17                         Respectfully submitted,

19 Dated: September 2, 2008        /s/ Gary P. Burcham
                                  GARY P. BURCHAM
20                                Attorney for Jose Alberto Villasenor

EXHIBITS A-D









D

EXHIBIT E



EXHIBIT F

# DECLARATION OF JOSE ALBERTO VILLASENOR

I, Jose Alberto Villasenor, do hereby declare under penalty of perjury:

1.          On June 18, 2008, I was driving a PT Cruiser in El Centro when I was pulled over by an El Centro Police Officer.

2.          A police officer came up to the driver's window asked me for my driver's license, the registration for the car, and my proof of insurance.

3.          I gave the police officer my license and the registration for the car, but I did not have an insurance card to give to the officer.

4.          The police officer took my license and the registration and went back to his car.

5.          A few minutes later, the officer came back and spoke to me.  I told the officer that if HE was going to give me a ticket, that I wanted to get the ticket immediately and leave because I was hungry and wanted to go buy something to eat.

6.          The police officer told me that I could not leave, and that I had to continue waiting in the car.

I so declare on this ___14th___ day of __August__, 2008, in San Diego, California.

_____
JOSE Alberto Villasenor
Declarant

F

EXHIBIT G

EL CENTRO POLICE DEPT

NOTICE TO APPEAR ☑ Traffic  ☐ MISDEMEANOR  ☐ Nontraffic

A176813

| Date | Time | ☐ AM Day of Week | ☐ PM | Geo # |

Name (First, Middle, Last)

Address

City                    State          Zip Code    ☐ Juvenile (18 & #)

| Driver Lic # | State | Class | B/D | Other Description |

| Sex | Hair | Eyes | Height | Weight | Race |

| Veh Lic No. | | State | | Color |
| | | | | ☐ C.V. (V.C. 15210b) |
| Yr of Veh | Make | Model | Body Style | ☐ H.M. (V.C. 353) |

Registered Owner or Lessee                ☐ Same as Driver

Address                        State          Zip Code  ☐ Same as Driver

City                    State          Zip Code

Evidence of Financial Responsibility

Eligible for Dismissal (V.C. 40610)                ☐ Booking Required

| | Violation(s) | Code | Description |
| Yes ☐ | | | |
| No ☐ | | | |

| Speed Approx. | Per Veh Max | Veh Limit | Safe | Radar |

Location of Violation(s)

Comments (Weather, Road Condition, Traffic Condition, etc.)